# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

BRANDEN WALLACE,                      :
                                      :
              Petitioner,             :
                                      :
      v.                              :        Civil Action No. 19-176-CFC
                                      :
ROBERT MAY, Warden,                   :
and ATTORNEY GENERAL OF THE           :
STATE OF DELAWARE,                    :
                                      :
              Respondents.            :

---

## MEMORANDUM OPINION

Branden Wallace. *Pro Se* Petitioner.


Kathryn Joy Garrison, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.


March 7, 2022
Wilmington, Delaware

CONNOLLY, CHIEF JUDGE:

Presently pending before the Court is a Petition for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 and subsequent amendments filed by Petitioner Branden

Wallace.  (D.I. 3; D.I. 8; D.I. 10)  The State filed an Answer in opposition, to which

Petitioner filed a Reply.  (D.I. 15; D.I. 21)  For the reasons discussed, the Court will

deny the Petition.

I.      BACKGROUND

On April 1, 2010, members of the Governor's Task Force ("GTF"), which included Probation Officer Philip Graham ("P.O. Graham"), Probation Officer James Kelly ("P.O. Kelly"), and police officers, were conducting routine home visit compliance checks in the Brookside, Newark area.  Home visit compliance checks are authorized by Delaware Department of Correction, Bureau of Community Corrections, Probation and Parole Procedure Number 7.3 ("Procedure 7.3").  At approximately 9:40 p.m., the GTF arrived at 79 Chaucer Drive to complete a home visit compliance check, because it was listed as the address of two Level II probationers, [Petitioner] and co-defendant Johanna Garcia ("Garcia").

[Petitioner] had been recently charged with Offensive Touching against Garcia, resulting in a No Contact Order against [Petitioner].  Consequently, [Petitioner's] continued residence at 79 Chaucer Drive would be a violation of the No Contact Order and, therefore, a violation of his probation. Accordingly, the compliance check was conducted to determine [Petitioner] current residence.

At the time of [Petitioner's] Offensive Touching charge, his probation officer, not P.O. Graham or P.O. Kelly, was advised of the No Contact Order and [Petitioner] provided him with a new residence address.  However, [Petitioner's] new address was not entered into the Delaware Criminal Justice Information System ("DELJIS").  Therefore, it was not available to P.O. Graham or P.O. Kelly on March 31, 2010, when a field sheet was printed for the purpose of conducting the routine home visit compliance check.

Upon arrival at 79 Chaucer Drive, P.O. Graham, accompanied by P.O. Kelly and Officer Eric Huston of the Delaware State Police, knocked on the front door of the residence. P.O. Graham also announced himself as a probation officer. Devonta Garcia ("Devonta"), co-defendant Garcia's fourteen-year-old son, opened the door wide, which P.O. Graham understood as an invitation to enter the premises.

At or near the threshold, P.O. Graham asked Devonta whether [Petitioner] or Garcia were home. Devonta answered in the negative. P.O. Graham entered and proceeded to conduct a "safety sweep" of the house to ensure that no one else was on the premises. The only persons at the residence were Devonta, his sister Shavonta Garcia, and Devonta's friend Shane Minchew—all of whom were minors and playing a video game at the time of the compliance check.

During the "safety sweep" of the home, also considered to be part of the Procedure 7.3 home visit compliance check "Walk–Through," P.O. Graham entered Garcia and [Petitioner's] bedroom. There he noticed what appeared to be a bag of cocaine in plain view on a bedside table. P.O. Graham then commenced Delaware Department of Correction, Bureau of Community Corrections, Probation and Parole Procedure Number 7.19 ("Procedure 7.19") in order to execute an administrative search of the residence.

In accordance with Procedure 7.19, P.O. Graham immediately held a case conference with his supervisor, P.O. Kelly. Together, they reviewed the entire Procedure 7.19 Search Checklist. Thereafter, P.O. Graham received permission to conduct an administrative search of the residence. He also received permission to search [Petitioner's] car parked in the driveway of 79 Chaucer Drive.

The administrative search of the residence yielded 1.9 grams of crack cocaine, 1.2 grams of powder cocaine, 26 bags of heroin, hypodermic needles and syringes along with other packaging materials, morphine and adderall pills, a handgun, ammunition to a different handgun, and $2,251 in cash. The administrative search of the car produced an additional 310.7 grams of powder cocaine and a loaded handgun, matching the type of ammunition found in [Petitioner] and Garcia's bedroom.

*Wallace v. State*, 62 A.3d 1192, 1193–95 (Del. 2012).

## A. Plea Negotiations and Motion to Suppress

Petitioner was charged with numerous drug possession and trafficking charges, firearm possession charges, and one charge of second degree conspiracy. (D.I. 15 at 8) Petitioner faced the possibility of being sentenced as a habitual offender to a mandatory term of life imprisonment if convicted at trial. (D.I. 16-15 at 81-82) After Petitioner's indictment and arrest, trial counsel moved to suppress the evidence discovered during the warrantless entry and searches of 79 Chaucer Drive and Petitioner's vehicle as unconstitutional, arguing that the probation officers did not have consent to enter or search the residence without reasonable suspicion. (D.I. 16-15 at 45-68; D.I.16-16 at 307) While the suppression motion was pending and prior to Petitioner's September 15, 2010 fast track hearing,[1] the State offered a plea to resolve Petitioner's violation of probation ("VOP") and new charges, which would have permitted Petitioner to plead guilty to trafficking in exchange for a recommendation by the State for eight years of incarceration. (D.I. 16-16 at 306-07) On September 10, 2010, trial counsel wrote Petitioner, explaining the options of taking the fast track plea or going to a hearing on his VOP charge. (D.I. 16-16 at 269) Trial counsel also told Petitioner that the motion to suppress "states strong legal grounds and I am optimistic we will win." *Id*. Petitioner had a "firm position from the outset . . . that he was not going to accept the plea offer, and . . . wanted to fight the charges against him." (D.I. 16-16 at 306-07) Petitioner subsequently rejected the plea offer. (*Id*.)

---

[1]Petitioner was placed on a fast-track calendar because he was on probation when he was arrested. (D.I. 15 at 8 n.21)

On September 16, 2010, trial counsel informed Petitioner that the same plea offer would remain open until his VOP hearing on September 22, 2010. (D.I 16-16 at 270, 306-07, 311)  Trial counsel explained the options of taking the plea or going to a hearing on the VOP charge, and the consequences of rejecting the plea or losing the suppression hearing. (D.I. 16-16 at 311-312)  Trial counsel advised Petitioner that while "we have strong grounds to support the suppression motion, I cannot guarantee the result." (*Id*. at 312)  Trial counsel also informed Petitioner that the State had advised that the plea offer would increase to ten years plus the VOP sentence if he rejected the offer, and that the plea offers would get worse as the case proceeds. (*Id*.)  Trial counsel informed Petitioner that, if he did not accept the plea, the State was going to make a plea offer to his co-defendant Garcia, and the State would "be looking for . . . Garcia to assist the State in [Petitioner's] prosecution in return for a more lenient sentence for her." (*Id*.)  Trial counsel informed Petitioner that he "need[ed] to understand that there is a tremendous risk in proceeding to trial," and if [he] change[d] his mind [about rejecting the plea offer, he] need[ed] to contact [trial counsel] immediately." (*Id*.)  Petitioner rejected the plea offer again, and the Superior Court found him in violation of his probation and sentenced him to two years in prison. (D.I. 15-1)

Before the suppression hearing started on January 21, 2011, the State offered Petitioner a plea, and informed the Superior Court about its plea recommendation of seven years of incarceration:

> We've had some further plea discussions, and as recently as this morning the State had made a plea offer to [Petitioner] to resolve them. [Petitioner] faces B Section habitual sentencing if he is convicted.  I have made it clear to this attorney and I believe his attorney has made it clear to [Petitioner], that,

4

> should the State be successful in this litigation I will seek a
> mandatory life sentence for [Petitioner]. And I want to make
> sure that if we are successful, [t]he [Superior] Court and I and
> [trial counsel] are not litigating this post-conviction where
> [Petitioner] claims he didn't know, or his attorney didn't advise
> him. So, I would like [t]he Court to have a colloquy with
> [Petitioner] and have him state on the record that he is
> rejecting our seven-year offer, knowing he faces life, if
> conviction.

(D.I. 16-15 at 81) Trial counsel then told the Superior Court that Petitioner understood

the plea offer and the risks involved, but still wanted to proceed:

> I spoke with [Petitioner] about the plea offer. He understands
> the plea offer, what's at risk. He understands there is a
> potential that the State is going to seek a life sentence if he is
> convicted at trial, that, if he loses the suppression hearing,
> there is not going to be any other plea offers, and the State
> intends upon proceeding to trial. I spoke to him about it briefly
> today, and he states he understands it and wants to proceed.

(*Id.*) The Superior Court held a brief colloquy with Petitioner, confirming that he wanted

to reject the offer and proceed with the suppression hearing. (D.I. 16-15 at 81-82)

On March 4, 2011, after supplemental briefing, the Superior Court denied the

motion to suppress, and subsequently denied Petitioner's motion for reargument. (D.I.

16-15 at 138-45, 157-61); *see State v. Wallace*, 2011 WL 2552640 (Del. Super. Ct. Mar.

4, 2011), *rearg't denied by State v. Wallace*, 2011 WL 2552550 (Del. Super. Ct. Mar. 8,

2011).

### B. Stipulated Trial, Sentencing, and Direct Appeal

Following the denial of the suppression motion, Petitioner agreed to a stipulated

bench trial on the trafficking, possession with intent to deliver a narcotic schedule II

controlled substance ("PWITD"), and possession of a firearm by a person prohibited

("PFBPP") charges ("new offenses") to avoid habitual sentencing and ensure a cap on

5

the sentencing recommendation. Trial counsel explained the reasoning for agreeing to a

stipulated trial as follows:

> [Petitioner] was facing a life sentence if he was convicted of
> these charges after a jury trial. The State made the offer today
> of stipulated trial. If he did that, they were going to drop some
> of the charges, recommend a minimum mandatory for the
> charges he pled guilty to, which would be 14 years. And that's
> what they would recommend.

(D.I. 16-15 at 165)  The following exchange occurred between Petitioner and the

Superior Court during the colloquy just prior to the bench trial:

> COURT: So the advantage of going to a nonjury trial, a bench
> trial with me, is the State will not ask that you be declared an
> habitual offender if you're convicted, but only ask that you
> receive the minimum sentences, as far as any of the charges
> against you that they are going to present this morning.
>
> *          *          *
>
> COURT:  And that's the only promise that's been made on the
> habitual offender thing, is that correct, any promises?
>
> PETITIONER:  A minimum of 14 years.
>
> *          *          *
>
> COURT:  The State would not ask for more than the 14 years?
>
> PETITIONER:  Yes.
>
> COURT:  So, there are two things the State's indicated to you;
> is there anything else?
>
> PETITIONER:  No.

(D.I. 16-15 at 166-67)  The Superior Court found Petitioner guilty of trafficking, PWITD,

and PFBPP. *See Wallace*, 62 A.3d at 1193–95.

6

At sentencing, it was disclosed that, when reaching the stipulation agreement, the State had mistakenly represented to Petitioner that the minimum mandatory sentence for the new charges was 14 years when it was actually 16 years. *See Wallace*, 2017 WL 4317261, at *1 n.3. During the sentencing hearing, Petitioner asked the Superior Court to impose the 14 year sentence that was agreed to when reaching the agreement on the stipulated trial. (D.I. 16-15 at 181) The Superior Court declined, explaining that it was not bound by any sentencing recommendation the parties may have reached, but rather, it was bound by statute to impose the minimum mandatory. (D.I. 16-15 at 181) The Superior Court sentenced Petitioner to a total of 16 years in prison: 8 years of incarceration at Level V for the trafficking conviction, 5 years of incarceration at Level V for the PFBPP, and 5 years of incarceration at Level V, to be suspended after 3 years for two years Level IV, to then be suspended after 6 months for Level III probation, for the PWITD conviction. (*Id.* at 182)

Thereafter, Petitioner filed a direct appeal.

> [The Delaware Supreme Court] remanded [Petitioner's] appeal to the Superior Court with directions that it address: "whether Devonta Garcia or [Petitioner] himself consented to entry of the premises;" and whether "the application of Department of Correction Probation and [Parole] Policy, Procedure 7.3 to this case is consistent with the U.S. Constitution." On remand, the Superior Court found that consent to enter the home was given by Devonta Garcia at the time of the compliance check, consent was given by [Petitioner] as part of his conditions of supervision, and that Procedure 7.3 is constitutional.

*Wallace*, 62 A.3d at 1193–95. Upon return of the remand, the Delaware Supreme Court affirmed Petitioner's convictions and sentences. *Id.*

7

In June 2013, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion").  *See State v. Wallace*, 2017 WL 4317261, at *1 (Del. Super. Ct. Sept. 27, 2017).  Petitioner filed an amended Rule 61 motion and a motion for appointment of counsel in October 2013.  *See id.*; (D.I. 16-24; D.I. 16-25)  Petitioner's first court-appointed attorney filed an opening brief in support of Petitioner's Rule 61 motion in February 2014, and then amended it in August 2014.  (D.I. 15 at 3)  Petitioner's Rule 61 representation changed twice – his first court-appointed attorney ceased practicing law, and his second court-appointed attorney retired.  (*Id.*)  Petitioner's third and final Rule 61 counsel initially filed a motion to withdraw, but later withdrew that request and filed an amended Rule 61 motion in April 2017.  (*Id.*)

The Superior Court denied Petitioner's amended Rule 61 motion on September 27, 2017.  *See Wallace*, 2017 WL 4317261, at *7.  That same day, the Superior Court issued an Order Modifying Sentences, stating that it found "extraordinary circumstances" under Superior Court Criminal Rule 35 to justify modifying Petitioner's related VOP sentence in order to make his sentence in this case conform with the amount of time the parties had incorrectly calculated he would receive in their agreement to stipulate to a bench trial.  (D.I. 16-16 at 353-56)  The Superior Court modified Petitioner's VOP sentence to discharge him as unimproved, and amended the effective date of his remaining sentence to allow him to receive credit for time-served since his detention.  (*Id.*)  Petitioner appealed the denial of his Rule 61 motion, and the Delaware Supreme Court affirmed the Superior Court's decision in April 2018.  *See Wallace v. State*, 184 A.3d 842 (Table), 2018 WL 1768652 (Del. Apr. 11, 2018).

8

In April 2019, Petitioner filed a second *pro se* Rule 61 motion. *See State v. Wallace*, 2019 WL 2486861, at *1 (Del. Super. Ct. June 13, 2019). The Superior Court summarily dismissed the Rule 61 motion as second or subsequent under Rule 61(d), and the Delaware Supreme Court affirmed that decision. *See id.* at *2; *Wallace v. State*, 222 A.3d 142 (Table), 2019 WL 5681412 (Del. Oct. 31, 2019).

## II.   GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states in pertinent part:

> An application for a writ of habeas corpus on behalf of a

9

person in custody pursuant to the judgment of a State court
shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the
courts of the State; or

(B)(i) there is an absence of available State corrective
process; or (ii) circumstances exist that render such process
ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity,
gives "state courts one full opportunity to resolve any constitutional issues by invoking
one complete round of the State's established appellate review process." *O'Sullivan*,
526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the
habeas claims were "fairly presented" to the state's highest court, either on direct
appeal or in a post-conviction proceeding, in a procedural manner permitting the court
to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005);
*Castille v. Peoples,* 489 U.S. 346, 351 (1989). If the petitioner raised the issue on direct
appeal in the correct procedural manner, the claim is exhausted and the petitioner does
not need to raise the same issue again in a state post-conviction proceeding. *See
Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further
state court review of those claims is barred due to state procedural rules, the federal
court will excuse the failure to exhaust and treat the claims as exhausted. *See
Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the
technical requirements for exhaustion" because state remedies are no longer available);
*see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Such claims, however, are

10

procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[2] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice

---

[2]*Murray*, 477 U.S. at 496.

11

exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *See Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolved the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the

12

absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.    DISCUSSION

Petitioner asserts six Claims in his timely-filed Petition:  (1) trial counsel provided ineffective assistance by advising Petitioner not to take a favorable plea offer; (2) the Delaware courts denied Petitioner a full and fair opportunity to resolve his Fourth Amendment suppression issue; (3) appellate counsel provided ineffective assistance by failing to adequately argue the Fourth Amendment suppression issue on direct appeal; (4) appellate counsel provided ineffective assistance by failing to argue that the State defaulted on a term the parties had agreed upon in stipulating to the bench trial; (5) appellate counsel provided ineffective assistance by failing to argue that the Superior Court erroneously assessed conflicting evidence regarding the probation officers' entry into the home which led to Petitioner's convictions; and (6) post-conviction counsel provided ineffective assistance by failing to present an argument in his first Rule 61 motion that the State failed to comply with its *Brady v. Maryland*, 373 U.S. 83 (1963) obligations with respect to an evidentiary scandal in Delaware's Office of the Chief

Medical Examiner ("OCME").

## A. Claim One:  Ineffective Assistance of Trial Counsel

In Claim One, Petitioner asserts that trial counsel provided ineffective assistance by telling Petitioner that the suppression motion stated strong legal grounds for suppression and that he (trial counsel) was optimistic that Petitioner would "win."  (D.I. 6 at 19)  According to Petitioner, trial counsel's deficient advice about the potential success of the suppression motion "robbed" Petitioner "of the opportunity to take two favorable pleas."  (*Id.*)  The Superior Court denied Claim One as meritless, and the Delaware Supreme Court affirmed that judgment "on the basis of and for the reasons assigned" by the Superior Court.  Given these circumstances, Petitioner will only be entitled to habeas relief if the Superior Court's decision[3] was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510 (2003).  Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.  *Strickland*, 466 U.S. at 688.  Under the second *Strickland* prong,

---

[3]*See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (reiterating that when a higher court affirms a lower court's judgment without an opinion or other explanation, federal habeas law employs a "look through" presumption and assumes that the later unexplained order upholding a lower court's reasoned judgment rests upon the same grounds as the lower court judgment).

a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. A court many deny an ineffective assistance of counsel claim by deciding only one of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

"Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 566 U.S. 134, 140 (2012). When alleged "ineffective advice led not to an offer's acceptance but to its rejection, [h]aving to stand trial, not choosing to waive it, is the prejudice alleged." *Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012). "In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164.

15

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Superior Court correctly identified the *Strickland/Lafler* standard as governing Petitioner's instant ineffective assistance of counsel contention. As a result, the Delaware Supreme Court's decision was not contrary to clearly established Supreme Court precedent.

The Court must also determine if the Superior Court reasonably applied the *Strickland/Lafler* standard to the facts of Petitioner's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Superior Court's denial of Petitioner's ineffective assistance of counsel allegations through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

In this case, the Superior Court found that

> [d]efense counsel have various duties and responsibilities in the plea bargaining process. First, defense counsel must communicate formal plea offers to defendants. In addition, defense counsel must explain the nature of the plea offer to defendants. According to the Delaware Supreme Court, the "decision to accept a plea offer ... must be an informed one, to be made only after full consultation with counsel."

16

However, the ultimate decision of whether to accept a plea must be made by the defendant. Therefore, it is the role of defense counsel to explain the benefits and consequences of a plea offer to the defendant so that the defendant is able to make an informed decision to accept or reject.

Trial Counsel's communications with [Petitioner] about the Initial Plea Offer and the Second Plea Offer satisfied this objective standard of reasonableness. Trial Counsel wrote to [Petitioner] on two separate occasions to explain terms of the Initial Plea Offer. Trial Counsel explained to [Petitioner] that future plea offers would only get worse and that [Petitioner] was facing the possibility of a mandatory life sentence if convicted and sentenced as a habitual offender. In addition, Trial Counsel stated at the suppression hearing that he explained to [Petitioner] the terms of the Second Plea Offer and the State's intention to seek a mandatory life sentence for Defendant if convicted. Therefore, Trial Counsel satisfied his obligation to inform [Petitioner] of plea offers and to counsel him about the decision to accept or reject.

In addition, Trial Counsel's statements that he was "optimistic" about the motion to suppress and that there were strong grounds to support the motion to suppress were not objectively unreasonable. Although Trial Counsel expressed optimism to [Petitioner] about the chance of success at the suppression hearing, he qualified this optimism by writing, "I cannot guarantee the result." In addition, Trial Counsel told [Petitioner] that there was a "tremendous risk in proceeding to trial."

*Wallace*, 2017 WL 4317261, at *4–5. The Superior Court also concluded that "it was not objectively unreasonable for trial counsel to believe that there were strong legal grounds to support the motion to suppress." *Id.* at *5. The Superior Court explained that, at the time of the suppression hearing, there was a genuine question about whether Procedure 7.3 allowed for warrantless entry of a probationer's home and whether Devonta Garcia gave consent for the probation officers to enter. *Id.* at *5.

The record supports the Superior Court's determination that trial counsel did not

17

perform deficiently in evaluating the suppression issues because he informed Petitioner of the terms of the plea offers and gave Petitioner enough information to make an informed decision about whether or not to accept the pleas. Although trial counsel told Petitioner that he believed they had "strong grounds to support the suppression motion, [trial counsel stated he could not] guarantee the result." (D.I. 16-16 at 306-07, 311-12) Trial counsel explained to Petitioner that he faced a life sentence if he were convicted of all charges at trial, that plea offers would get less favorable as time went on, and that Petitioner "need[ed] to understand that there is a tremendous risk in proceeding to trial." (D.I. 16-15 at 81-82; D.I. 16-16 at 311-12) Moreover, according to trial counsel's Rule 61 affidavit, Petitioner did not want to take a plea and wanted to fight the charges on the grounds asserted in the motion to suppress. (D.I. 16-15 at 81-82; D.I. 16-16 at 306) Even in this proceeding, Petitioner does not explicitly assert that he would have accepted the offered pleas.

The Superior Court also reasonably determined that Petitioner failed to prove prejudice. Prior to the start of the suppression hearing, the Superior Court conducted a colloquy with Petitioner. During that colloquy, Petitioner indicated that trial counsel had discussed the State's second plea offer and had also informed Petitioner that he faced a mandatory life sentence. Yet, Petitioner still rejected the second plea offer and chose to proceed to trial. *See Wallace*, 2017 WL 4317261, at *6.

Based on the foregoing, the Court concludes that Petitioner has failed to substantiate either prong of *Strickland*. Thus, the Court will deny Claim One for failing to satisfy § 2254(d).

18

### B. Claim Two:  Fourth Amendment

In Claim Two, Petitioner contends that he was denied a full and fair opportunity to litigate his motion to suppress the evidence discovered as a result of the searches of 79 Chaucer Drive and his vehicle "when the [Delaware] Supreme Court remanded the case back to the Superior Court" which violated his due process right to have an impartial tribunal at his suppression hearing.  (D.I.15 at 18)

The State properly argues that the instant Fourth Amendment Claim is not cognizable on federal habeas review under the doctrine established in *Stone v. Powell*, 428 U.S. 465, 494 (1976).  In *Stone*, the Supreme Court held that a federal court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state court.  *See also Wright v. West*, 505 U.S. 277, 293 (1992). A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism.  *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980).  Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore avoids the *Stone* bar, if the state system contains a structural defect that prevented the state court from fully and fairly hearing the petitioner's Fourth Amendment argument. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).  Notably, "an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Id*.

In this case, Petitioner filed a pre-trial motion to suppress the evidence pursuant

19

to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure.  The Superior Court denied the suppression motion after conducting a hearing.  Petitioner then challenged that decision in his direct appeal to the Delaware Supreme Court. The Delaware Supreme Court affirmed the Superior Court's judgment.

This record clearly demonstrates that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claims in the Delaware state courts. Although Petitioner asserts he was denied a suppression hearing before an impartial tribunal, he really just disagrees with the Delaware state courts' suppression decisions in his case.  (*See* D.I. 6 at 26-38)  The fact that Petitioner disagrees with the state court decisions and the reasoning utilized by the state courts is insufficient to overcome the *Stone* bar.  Therefore, the Fourth Amendment argument in Claim Two is barred by *Stone*.

### C. Claims Three, Four, and Five: Ineffective Assistance of Appellate Counsel

In Claim Three, Petitioner contends that appellate counsel was ineffective for failing to competently argue his Fourth Amendment claim on direct appeal.  Claim Four asserts that appellate counsel failed to argue that the State reneged on one of the terms it promised when negotiating with Petitioner for a stipulated trial.  And finally, in Claim Five, Petitioner contends that appellate counsel should have argued that the Superior Court erred in relying on the probation officers' version of facts regarding their entry into 79 Chaucer Drive rather than the version of facts provided by the three minors who were at the house at the time of the officers' entry.

The record reveals that Petitioner raised Claim Four in his first *pro se* Rule 61

motion, but post-conviction counsel failed to assert it in one of the subsequent amended Rule 61 motions or on post-conviction appeal.  Petitioner included Claims Three, Four and Five in his second Rule 61 motion.  The Superior Court summarily dismissed Petitioner's second Rule 61 motion under Delaware Superior Court Criminal Rule 61(d) as procedurally barred because it was second or successive and Petitioner failed to plead with particularity that new evidence existed to create a strong inference that he was actually innocent, or that a new, retroactively applicable rule of federal or Delaware constitutional law applied to his case and rendered his conviction invalid.  *See Wallace*, 2019 WL 2486861, at *2.  The Delaware Supreme Court affirmed the Superior Court's decision.  *See Wallace*, 2019 WL 5681412, at *1.

The State contends that Claims Three, Four, and Five were procedurally defaulted in the state courts and ultimately procedurally barred from habeas review, because the Delaware state courts found the Claims to be barred under Rule 61(d). The State, however, does not address: (1) the history of Rule 61(d) and the fact that the current version of Rule 61(d) was added to Rule 61 in 2014; (2) the fact that the Court has not yet decided whether the current version of rule 61(d) constitutes an independent and adequate state procedural rule for procedural default purposes when, as here, the petitioner filed his first Rule 61 motion prior to the 2014 amendment of Rule 61; and (3) why, given the aforementioned issues with Rule 61(d), the current version of Rule 61(d) constitutes an independent and adequate state procedural rule.

Given the myriad of issues related to determining if the post-2014 version of Rule 61(d) constitutes an independent and adequate state procedural rule for federal habeas procedural default purposes, the Court concludes that the interests of justice are best

served in this instance by addressing the merits of Claims Three, Four, and Six. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The Court notes that claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to ineffective assistance of trial counsel claims. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). An attorney's decision about which issues to raise on appeal is strategic, and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Smith v. Robbins*, 528 U.S. 259, 272 (2000); *Jones v. Barnes*, 463 U.S. 745 (1983). As a general rule, the presumption of effective assistance of appellate counsel will be overcome "only when ignored issues are clearly stronger than those presented." *Smith*, 528 U.S. at 285.

### 1. Claim Three

Petitioner contends that appellate counsel provided ineffective assistance by incompetently presenting his Fourth Amendment/suppression argument on direct appeal. The crux of the motion to suppress was that Devonta Garcia—the minor who opened the door for the probation officers— was 14 years old and lacked any actual or apparent authority to consent to the probation officers entering the home or master bedroom. In response, the State argued that Petitioner had limited rights to privacy because he was a probationer and the entry into the home was not done to perform a search but, rather, was an authorized compliance check to determine if Petitioner was at the residence in violation of a no-contact order. (D.I. 16-16 at 287-88) On direct appeal, appellate counsel argued that the Superior Court erred in denying Petitioner's

suppression motion because the probation officers did not have consent to enter the home in the first instance and, in the second instance, they could not enter the home without reasonable suspicion. (D.I. 16-2 )

As a result of appellate counsel's arguments, the Delaware Supreme Court remanded case to the Superior Court to determine if Devonta Garcia or Petitioner himself consented to the probation officers' entry of the premises, and also to determine if the application of the Department of Probation and Policy Procedure 7.3 was consistent with United States Constitution. (D.I. 16-16 at 333)  The fact that the appellate arguments caused the Delaware Supreme Court to remand the case essentially eradicates Petitioner's argument that appellate counsel did not competently argue the suppression issue.  Notably, Petitioner has not indicated how appellate counsel could have challenged the suppression issue in a more "competent" manner, nor has he demonstrated that appellate counsel ignored arguments about the suppression issue that were clearly stronger than the arguments that resulted in a remand.  Accordingly, the Court will deny Claim Three as meritless.

### 2.  Claim Four

In Claim Four, Petitioner contends that appellate counsel failed to argue that the State reneged on its promise not to ask for more than the mandatory minimum 14 years of imprisonment if Petitioner stipulated to a bench trial.  The record reveals that the State mistakenly asserted that the minimum mandatory sentence was 14 years when it was actually 16 years.  Petitioner was sentenced to the minimum mandatory 16 years for his new-offenses convictions which, when added to his two-year VOP sentence, resulted in a total 18 years of incarceration.

Although appellate counsel did not raise on direct appeal the argument regarding the State's mistaken sentencing assertion, the Superior Court actually modified Petitioner's sentence on the same day that it denied Petitioner's first Rule 61 motion. Notably, in its modification of sentence order, the Superior Court explained:

> [Petitioner] agreed to a stipulated bench trial for the New Offenses based, in part, on incorrect information that the minimum mandatory time he faced was 14 years.
>
>     *                      *                    *
>
> At the time [Petitioner] agreed to a stipulated bench trial, he had already been sentenced to 2 years at Level V for the VOP and it was represented to him that the law required an additional 14 years of minimum mandatory time for a total of 16 years at Level V. Accordingly, the Court will modify the VOP sentence so that [Petitioner's] total sentence will be consistent with the representations made to him when he agreed to a stipulated bench trial. Also, after modifying the VOP sentence, it is necessary to modify the effective date of the sentence for the New Offenses so that [Petitioner] is properly awarded credit for time served since his detention.

(D.I. 16-16 at 354-356)  The Superior Court then modified the VOP sentence to provide that Petitioner was discharged as unimproved and modified the sentence for the new offenses to impose an effective date of July 23, 2010.  (D.I. 16-16 at 356)

To recap, Petitioner was originally sentenced in 2010 to a total of 18 years of incarceration – 2 years for his VOP and 16 years for the convictions at issue here – with the sentences to run consecutively.  (D.I. 16-15 at 186)  His VOP sentence was effective as of July 23, 2010.  *See Wallace*, 2017 WL 4317261, at *1.  The Superior Court's act of discharging Petitioner's VOP sentence as unimproved and changing the effective date of his sentence for the convictions at issue here to July 23, 2010 essentially changed Petitioner's actual term of incarceration to 16 years – the same total

24

number of years Petitioner would have spent in prison had he been given the 14-year sentence the State mentioned during the stipulated-trial negotiations. Since Petitioner has received the relief he argues he was denied by appellate counsel's failure to raise Claim Four on direct appeal, the Court will deny Claim Four as moot. *See, e.g., Sibron v. State of New York*, 392 U.S. 40, 57 (1968) (noting that a claim in a habeas petition challenging a conviction becomes moot when it is shown that the petitioner has already received all the relief possible from that claim.).

### 3. Claim Five

In Claim Five, Petitioner contends that appellate counsel was ineffective for failing to advance an argument that the Superior Court erred in its resolution of conflicting evidence presented during the suppression hearing, bench trial, and remand by accepting the probation officers' version of what occurred during their entry into the house at 79 Chaucer Drive instead of the version of events provided by Devonta Garcia and the other two minors who were in the house. (D.I. 6 at 47-51)

As a general rule, credibility determinations are reserved for the trier of fact, not appellate courts. *See Lavender v. Kurn,* 327 U.S. 645, 653 (1946) (noting that it "would be an undue invasion of the jury's historic function for an appellate court to weigh the conflicting evidence, judge the credibility of witnesses, and arrive at a conclusion opposite from the one reached by the jury."); *United States v. Wise*, 515 F.3d 207, 214 (3d Cir. 2008) ("It is not our role to weigh the credibility of the witnesses. Indeed, we must be ever vigilant ... not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting our judgment for that of the jury.") As previously discussed, on direct appeal, appellate counsel did challenge the validity of

the Superior Court's finding of consent with respect to the probation officers' entry into 79 Chaucer Drive, and appellate counsel's challenge succeeded in getting the matter remanded to the Superior Court for further argument.  The Delaware Supreme Court's act of remanding the case based on appellate counsel's arguments demonstrates the viability of the arguments raised, and Petitioner has not demonstrated that challenging the Superior Court's determination of credibility issues would have been a clearly stronger argument than the two claims appellate counsel actually raised.  Given these circumstances, the Court will deny Claim Five.

### D. Claim Six:  Ineffective Assistance of Postconviction Counsel

In his final Claim, Petitioner contends that postconviction counsel was ineffective for failing to present a *Brady v. Maryland* violation claim with respect to an investigation in 2014 by the Delaware State Police and the Delaware Department of Justice into an evidence scandal that occurred at the OCME.  The 2014 OCME investigation revealed, *inter alia*, that drugs sent to the OCME to be tested in criminal cases had been stolen. (D.I. 10 at 1-3)

There is no federal constitutional right to effective assistance of post-conviction counsel.  *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991).  In fact, the AEDPA specifically provides that "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding under section 2254."  28 U.S.C. § 2254(i).  Therefore, the Court will deny Petitioner's instant ineffective assistance of post-conviction counsel argument because

it does not assert an issue cognizable on federal habeas review.[4]  *See, e.g., Jordan v. Sup't Somerset SCI*, 2017 WL 5564555, at *1 (3d Cir. Feb. 15, 2017) ("[C]laims alleging ineffective assistance of PCRA counsel are non-cognizable in federal habeas, 28 U.S.C. § 2254(i).").

## IV.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed, the Court concludes that the instant Petition must be denied.  An appropriate Order will be entered.

---

[4]Alternatively, Claim Six is procedurally barred from habeas review.  Petitioner did not present this argument to the Delaware state courts in his first or amended Rule 61 motions that were pending at the time the OCME evidence scandal was discovered.  At this juncture, any attempt to present Claim Six in a new Rule 61 motion would be barred as time-barred under Rule 61(i)(1).  Since Rule 61(i)(1) is an independent and adequate state procedural bar, Claim Six is procedurally defaulted.  Petitioner does not assert any cause for, and prejudice resulting from, his default of Claim Six, nor does he show that a miscarriage of justice will result if the Claim is not reviewed on the merits.  Thus, Claim Six is both non-cognizable and procedurally barred from federal habeas review.